The next case this morning is number 520-0246, Cori v. Schlafly et al. Arguing for the appellant, Roger Schlafly, is Laura Schrick. Arguing for the appellee, Anne Schlafly-Cori, is Matthew Rossiter. Arguing for the appellee, Liza Schlafly-Forschow, is Kelly Farrell. Each side will have up to 15 minutes for their argument. The appellant will also have five minutes for rebuttal. The two appellees will be splitting their time 12 minutes and three minutes. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. And please remember only the clerk is permitted to record these proceedings today. Morning, counsel. Morning. Morning. This is 5-20-0246. Ms. Schrick, are you ready to proceed? I am, thank you. Go right ahead. Thank you. Justices, my name is Laura Schrick, and I represent the appellant in this matter, Roger Schlafly, in his capacity as trustee for the Testamentary Trust of John Fred Schlafly. We're here today appealing on an interlocutory basis from a order granting partial summary judgment of July 20th, 2020. The issues in that order, as the court is probably aware, largely pertain to the request for distribution of assets from this trust. There are some other matters associated with this case, which we'll get into today during the course of argument, including jurisdiction, choice of law, as well as the issue of trust construction. We would ask the court, obviously, to refer to our briefs, and we incorporate our briefs here for the matters that we do not cover orally. But we'll go ahead and get started with those issues today. I think the threshold issue here for the court is the issue of personal jurisdiction. The court decided a motion for personal jurisdiction in this case. It found that it had personal jurisdiction over Mr. Schlafly, my client, in his capacity as trustee of the trust, and therefore over the trust. It found that it lacked personal jurisdiction over Mr. Schlafly personally. We believe that finding was in error, Judge, and that it would make any resulting orders entered by the court void. The issue here when we determine the question of jurisdiction for a trust is its place of administration, and I think the parties agree on this standard. There are five factors that are considered in determining where a trust is administered. They include the residence of the beneficiaries, the location of the trust assets, the residence of the trustee, the language of the trust,  In this case, it's fairly straightforward. It's fairly clear that those factors weigh strongly against the exercise of jurisdiction over the trust in Illinois. Only one of the six beneficiaries of this trust has any residence in Illinois, and that particular individual resides here part-time, also maintaining a residence in Missouri. It's our position that trust assets are not located in Illinois. There is really no evidence of any trust assets in Illinois. The asset here is a investment account that's maintained by TD Ameritrade and Scott Trade. It manages a brokerage office that's located in Southern Illinois, but the actual assets, I don't believe there's any evidence that connects them to this area. So statements for that account were mailed for a period of time to Alton, but again, the assets themselves, there's no evidence of them being located in Illinois. The residence of the trustee. The trust in this case provided for co-trustees, my client, and his brother. His brother is the beneficiary who splits time between Missouri and Illinois. However, from the inception of this trust, approximately 20 years, my client has served as co-trustee, and during almost all of that time, he has resided outside of Illinois. So when we look at the factors of the residence of the trustee- What about the other trustee? Yes, the other trustee resides part-time in Illinois. So that's a small factor, but in the great scheme of things- Why is that a small factor? Because there are many other factors, and so it's maybe one-sixth or so of the factors. He's only one of the two trustees, and considering the other factors, which also supports jurisdiction outside Illinois. But at the time the complaint was filed, he was a co-trustee, isn't that true? That is true. He was a co-trustee, as was my client. So there is some connection to Illinois, but we believe the weight of the factors mitigate against the exercise of jurisdiction. The other two factors, the language of the trust. The trust does not contain any sort of Illinois choice of law provision, any sort of jurisdictional provision. It specifically references in Article V that assets can be located outside of Illinois, and that obligations can be made with non-residents of Illinois. And lastly, where the business of the trust is conducted. Again, based on the residence of the trustees, the business of the trust is conducted in multiple states, including Illinois, but also including California and other states. This is also true because the beneficiaries, five of the six reside outside Illinois. So considering those- Who's address was listed on the checks? I'm not certain whose address was listed on the checks, Judge. I think probably the trust. Oh, I'm just not certain. I know that the investment account statements went to an Alton address for the co-trustee. And whose address was on the tax returns and investment portfolio? The tax returns were addressed to the Alton residents of the co-trustee. The investment portfolio for a period of time, I believe the statements were also mailed to Alton. Thank you. You're welcome. So as it relates to jurisdiction over the trust, considering those factors, as well as any kind of due process analysis, we believe that jurisdiction really properly lies outside of Illinois, that the court lacked jurisdiction to enter its July 20th order. We'd also ask the court to revisit the issue of trust construction, which is a central issue in the July 20th order. As a threshold matter, there's no evidence in the record that the court conducted any sort of choice of law analysis. That was an issue that was raised by my client. And we believe it's significant in this case because of the factors we just identified, that there are multiple states that have significant connections to this case, including California, Missouri, and potentially Illinois. Without doing that analysis, we don't know exactly what standards or law the court should be applying in conducting its interpretation of the trust. We've cited in our brief in Illinois statute, which permits trustees to have absolute discretion to hold property until in the judgment of the trustee, the disposition should be made. And that's section 16.220 of the California Probate Code. So if the court were to have conducted this analysis and determined, for example, if the California law applies, arguably a more differential standard should have been applied to the trust interpretation, affording the trustee, in this case, my client, since the co-trustee had defined the discretion  And as you may have heard, there are several issues that complicate distribution of this trust, including a pending tax return issue that's still subject to review by the IRS, and so at least earlier this month was subject to review at the time of the order, and a series of litigations involving various family members in both Missouri and Illinois. We would note that the trustee discretion is an issue that varies by law of various states, and that that was an issue that the trial court did not exactly consider in making its ruling. We also believe the trial court erred in its interpretation of the trust to compel a distribution to both the petitioner and to respondent Liza Forshaw. If the court looks at the trust, it's a little bit of an unusually drafted trust in that the provision that would apply here because Mrs. Schlafly survived Mr. Schlafly, the distribution of the estate is made to the children upon the death of Mrs. Schlafly as though she pre-deceased her husband. It's kind of an unusual provision, and when you go to the section on that provision, it says again that the shares assuming Mrs. Schlafly pre-deceased should be held by Mrs. Schlafly as trustee for their daughter, the petitioner. So obviously if Mrs. Schlafly pre-deceased, she's not capable of serving as trustee, and there's some ambiguity or lack of clarity in the drafting of that instrument. That section is the key section here of the trust, and what it says essentially is that the, not essentially, I'll say what it says, that the share for the petitioner shall be held by Mrs. Schlafly as trustee, and then to other siblings. The trustee can apply the income and principle as they determine for the benefit of the petitioner, and it's the settler's intention that the trustee have absolute discretion in that regard. The provision continues to say that the trust will vest absolutely in Anne when she reaches age 26 and being the petitioner. That language is compared to the shares for the other children, which are to be distributed. So there's three verbs. How old is she? Well beyond 26. I'd say she's middle-aged. I'm not exactly aware of her precise age. What do you say middle age is? Don't go down that rabbit hole. I don't wanna get myself in trouble here, but there are three different terms that are used in this trust. We have to, in construing the trust, give effect to the intent of the settler and the document as a whole in so doing. So if you review the trust as a whole, the settler clearly knew that there were three different terms to use. He talks about terminating the trust upon the death of his wife. He talks about distributing shares to the five other siblings apart from the petitioner, and then he talks about the petitioner's share vesting. Clearly those terms have meaning and they need to be given meaning by this court. So the trust terminated upon the death of Mrs. Schlafly. There was to be a distribution to five of the six children, and then there is a vesting of a trust for the daughter, Anne. Our position is that vesting includes a vesting in interest, meaning that there's no obligation, particularly given the discretion to the trustee under the trust instrument, and potentially California law if it applied under a choice of law analysis, to distribute it. The trust specifically says that the trustee can accumulate income. So because of the vesting language, it's our position that there's no requirement of a distribution to the petitioner and that the trial court erred in ordering that in its summary judgment order. There are a couple of additional factors that we'd like the court to consider. There's a spend-thrift clause in this trust, as the court may be aware. It's our position that the trial court erred in granting summary judgment over our client's objection without permitting him to do discovery on the petitioner's compliance with the spend-thrift clause. Because of the nature of this litigation, he believes, and he's put in an affidavit in support of the motion, or verified summary judgment pleading, that the petitioner has pledged her trust interest to her attorneys to help fund some of these other litigation matters. That would be clearly contrary to the intent of the settlor, and something that the court would need to allow our client to conduct discovery on so that he can ensure that the settlor's intent is enforced and that trust funds are not used to fund other litigation or support debts that they're not entitled to be afforded under the trust. There's one additional trust provision I apologize that I'd like to reference also that the court should do regarding the trust construction, and that's section C of article four, article four being the section with the termination, distribution, and vesting language. Section C talks about what would happen if one of the siblings would pass away, and it discusses that if the siblings had a child, that child would take their interest. Absent that, the share wouldn't be passed among the surviving siblings. Notably though, it says that that share, if it is this portion allocated to petitioner, will be held in trust, and the portion to the other siblings will be held in fee. Again, this reinforces the idea that vesting and distribution are different. Anne was being treated differently here. She has her own whole section, and in the provision for survival, again, expressly to her in trust, to the others in fee. Lastly, I'd like to talk on the causes of action that were applied here. The cause of action that the court granted summary judgment on was a count two of the complaint brought by the petitioner, which was an action to compel turnover. It's our position that there is no such thing as an action to compel turnover under Illinois law. We recognize that in dealing with the trust, the court has some discretion, and that it can kind of take steps that it feels are necessary and appropriate. But the court in this case entered summary judgment on count two, which included a prayer for punitive damages. Because an action to compel turnover isn't a recognized cause of action, as say, for example, breach of fiduciary duty or a breach of trust type of action, there's no basis for pleading a cause of action seeking punitive damages under that theory. And certainly the court would have erred in granting summary judgment on the count in its entirety, which is how the order is phrased. So it's our position that the action would need to be remanded, even if you disagree with our interpretation to clarify that the summary judgment isn't on the entirety of count two, but that it's limited to the partial summary judgment issue and the relief requested in the motion, which is an ordered compelling turnover. As it relates to Liza, our position on her position is that she's a respondent. She has no operative pleading in this case. She has no complaint. She sought partial summary judgment, again, compelling a distribution of her share as well as an accounting. We don't disagree that she's entitled as a respondent or as a party who hasn't filed an operative pleading or claim to seek summary judgment on a issue or matter, but she's not entitled to seek affirmative relief absent a pleading. And so it's our position that the court erred in awarding her relief on the basis of her motion to compel turnover and partial, well, not even motion to compel turnover, her motion for partial summary judgment seeking a distribution or turnover of her share of the trust. I'll wait to hear from counsel before wrapping this up, but ultimately we're asking the court to reverse and remand this matter. Thank you. Thank you, counsel. I have a chance for a rebuttal. Thank you. Mr. Rossiter, is that you're going next? Yes, sir. Go right ahead. Thank you, your honor. May it please the court. What I will do is address the issues as presented by my opponent and I think that'd be a much more orderly way to do this. First of all, your honor, with respect to count two, our request to compel distribution, there are two specific statutory bases for that action. The first is 760 ILCS 3 slash 1001, subsection B, and that says to remedy a breach of trust that has occurred or may occur, the court may, number one, compel the trustee to perform the trustee's duties. Right there, what the trustee is compelled to follow the terms of the trust. The trustee is compelled by law to follow the terms of the trust in a proper fashion. The trustee doesn't have discretion to disregard mandatory terms of a trust. And in this case, that mandatory term being that this trust has terminated. When Phyllis Schlafly died in September of 2016, this trust terminated. The next subsection two of 3 dash 1001 says, to enjoin the trustee from committing a breach of trust. Subsection four, to order a trustee to account. Your Honor, those are all, or members of the court, those are all things that Judge Smith took into account and stated in her order. The other basis is 760 ILCS 3 slash 201, and it's regarding the role of the court and administration of trust. And it says, the court may adjudicate any matter arising in the administration of a trust to the extent its jurisdiction is invoked by an interested party. In this case, the matter arising in the administration is this trustee's refusal to properly terminate the trust and this trustee's improper interpretation of the trust terms. That statute also references jurisdiction. So I'll address that right now and kind of get to that, because I think we all agree that's a threshold issue, but it's very straightforward. We've laid it out in our brief, and in particular, I'm looking at page seven. I think the law is clear that jurisdiction is assessed at the time of filing. John Schlafly was a co-trustee at that time. That was September of 2017. In particular, I focus on where was the business of the trust? And our brief lays it out, I believe pretty clearly, that the business of the John Fred Schlafly Trust was conducted in Alton, Illinois, by a resident of Alton, Illinois, John Schlafly. He admitted he lived there since 2005. He filed tax returns on behalf of the trust. Eight of them he filed with the state of Illinois. Every one of those returns lists an address of 322 State Street, Alton, Illinois. He filed eight more with the federal government, listing that same address. As our brief says, he wrote 15 checks from an account. The account, the address on that account shows the 322 State Street address in Alton. We, in the record, provided the statements from the Scott Trade account. The address of Scott Trade, where was that managed? Edwardsville, Illinois. We then have, or John Schlafly admitted that he received mail, all of this mail, he received it at 322 State Street. Finally, when he, after we filed suit, and while we were trying to serve him, he then wrote a letter to his brother, his resignation letter, and that's in the record. The letter lists the State Street address in Alton, Illinois, on the top of the letter. That's where he was conducting his business. In fact, the letter says what it says, but he says, I've provided you with the books and records of the trust, so you can fully manage the trust. It's all the books and records. That's what he's referring to. Jurisdiction under the law could not be any clearer that it is in Illinois. Second, I'd next like to go to the terms of the trust. The terms of the trust are very clear. This is not complicated. This trust is not unusual. It's just a testimony trust written in very basic form. Counsel referred to section 4C in a reference to, this clause, in trust for Ann and in feed to others. Well, it follows section A, which discusses the fact that if Ann Corey is not 26 years of age, her share is held in trust. That's plain English. There is no other way to interpret this trust than how the trial court interpreted it, which is simple. This trust terminated when Phyllis Schlafly died in 2016. In particular, I wanna make a point about A, to underscore what I believe is an absurd argument by the appellant, and that is for this court to accept appellant's argument, this court has to ignore that last sentence. It has to. The sentence that says, said trust shall vest absolutely in my daughter, Ann Schlafly, when she reaches the age of 26. If this court does not ignore that, the court reads it, and under the law, you give full name to the terms of this clause and the trust as a whole, and you determine, like the trial court did, that it terminated. The only way you can find that this share is held in trust is if you ignore that, and that's contrary to the law, because you're required to read the whole trust. Next, counsel, what I like to do, getting back to, you look at the jurisdiction. I believe we've satisfied that Illinois is jurisdiction second. We look at the terms of the trust. I believe the terms of the trust are clear. It just takes, it's plain English. It's straightforward, but third, I wanna address why the judgment and order of the trial court was correct, and that it makes sense. It's alluded in appellant's arguments that the trust usurped the role of the trustee, and that the court did no such thing. What the court did was, A, it properly interpreted the terms of the trust, calling for a termination, and then B, it said, follow the law, and in particular, and this is important, it's the statute is 760-ILCS3-817, and we address it on page, we cite it page 24, but this is called distribution upon termination, and in that statute, it tells a trustee under Illinois law that you provide an accounting, that you have the beneficiaries acknowledge their receipt and agreement with that accounting, and then it also says that a trustee can provide a holdback, can say, I'm holding back some funds, and here's why. That's all the trial court did, was properly interpret the terms of the trust, and then said, follow the law, and I'm gonna take this further regarding section 817, and what I believe are absurdities in the appellant's argument, and it gets into what I call distractions. The first distraction is this whole tax issue. Now, the tax issue rests upon some things that John Schlafly and Roger Schlafly say, but if taxes are an issue in this administration, and more importantly, if they ever were an issue in this administration, a trustee by law would follow 817 and say, taxes are an issue, the IRS has notified us, an accountant has given an opinion, we need to hold back X dollars. This happens all the time, it's very common. The only thing in this record before this court is what John Schlafly thinks, and what Roger Schlafly think, but I ask this court, I say two things. First of all, this is a distraction, and in no way should prevent termination subject to a holdback, but let's take it further, and I ask the court to hold appellants to the record, and the record, page 737, and then again also in the brief of the appellants, it says that the statute of limitations for IRS examination expires December 5th, 2020. Well, according to the record, there is no tax issue. It expired on December 5th, so that is not an issue as we sit here, if it ever even was an issue. The next distraction, page 22, or actually, I'm referring to my brief, sorry. The next distraction is this related litigation. They raised it in their brief, they raise it with its own heading, so we have to address it. We told this court that it has nothing to do with this case because the John Fred Schlafly Trust is not a party to any of that litigation. We told you on page 22 what that litigation was about, but we then also let you know that John Schlafly filed a false affidavit in January of 2020 in front of Judge David Dugan. They raised the issue, we had to respond, and then their response is interesting because they then, in response to the fact that John lied to the court, they then said, well, that's not relevant. Well, you made it relevant, so again, another distraction of this related litigation. We then get into what I believe is the fourth distraction, and that's this Spendthrift Clause. Under the terms of the trust, this trust terminated when Phyllis Schlafly died. Therefore, the funds need to be distributed, period. That's pursuant to the terms of the trust and pursuant to the law. Taking this- I thought I was going to cut you off, but I think your time's run, and I'm gonna let Ms. Farrell proceed. Sorry, I thought that was me. Sorry, thank you. That's all right. Thank you. You need to take yourself off mute, please. Okay, thank you, Your Honor. May it please the court. My name is Kelly Farrell, and I represent appellee respondent Liza Forshaw.  we joined petitioners' arguments on many of the issues raised by appellant. This morning, I will briefly address the issue that is unique to us and our opposition to appellant's appeal, and that's the issue regarding summary judgment. The primary difference between petitioner and respondent is a procedural one. Although Liza Forshaw is a necessary party to the action, there were no claims filed against her personally, nor did she assert any counterclaims or cross-claims. However, she filed a motion for partial summary judgment seeking the court's determination on the trust language, which is strictly a matter of law and a major issue in the case. In her summary judgment, she argued just like petitioner that upon her mother's death more than four years ago, the trust terminated and the trust should be distributed. That's the same substantive issue interpretation argued by petitioner, because once petitioner reached the age of 26, then the operative terms of the trust treated the beneficiaries the same. The trial court agreed with respondent and the petitioner's interpretation, and the remaining actions that followed are dictated by the Illinois Trust Code as Mr. Rossiter just explained. It required mandatory distribution and a final accounting, which allowed for appellant to set a reserve for the tax issues. Here, the only unique issue about our party, the respondent for Shaw is the appellant argues that she could not avail herself of summary judgment. In her reply, she cites a number of federal cases that say rule 56 of the federal rules of civil procedure do not allow a defendant to oppose another defendant's motion for summary judgment on behalf of the plaintiff. The difference here is the Illinois summary judgment rule allows by the plain language for a summary determination of major issues by a party. That's what respondent for Shaw availed herself of. So the other issue is that she probably used summary judgment on this major issue of law. To the extent, your honors, do not think summary judgment was appropriate. The appellant waived it, but not raising it in the trial court. There was a nine month gap on briefing in the summary judgment. Had this issue been raised, but in the trial court level, respondent for Shaw could have petitioned the court to amend her pleadings. However, it was never raised. Therefore it's waived by appellant. There's no reason not to consider this waiver here as argued in footnote four of their reply. And your honors, I see my time has run. If I can just conclude with one sentence. Go right ahead. Liza for Shaw is a beneficiary of the trust. She has been waiting for four years for its termination and distribution. There is no just result that would allow this court to ignore the terms of the trust for the beneficiaries. We're asking that the court uphold the trial court's opinion. Before I let Ms. Schrick go with a rebuttal, do any of the justices have any questions for either Mr. Rossiter or Ms. Farrell? None. Justice Moore, any questions? No. Okay, then go right ahead Ms. Schrick. You're on mute. You need to take yourself off mute, please. There we go. Thank you. And thank you for the reminder. We just heard a lot of references to the Illinois trust code and the provisions that it may apply when a trust terminates. As a reminder, a threshold issue in this case is choice of law. And if a different state's law applies, that Illinois trust code provision is inapplicable. So we would redirect the court's attention again to the issue of choice of law, which is determined based on the situs of the trust. Under Illinois case law, that's where the active duties of the trustee are performed. Clearly, the active duties of the trustee who's being asked to make these distributions are performed outside of Illinois. And the court's failure to conduct a choice of law analysis and failure to apply the applicable statute is significant. We also heard a lot about the trust terminating. And there is a language that John Fred Schlafly passed that this trust shall terminate and the balance to be disposed near the expense of this village if my wife had not survived me. That's in article three. Ms. Schrick, I'm sorry. Going in and out. Could you state that again, please? I think I'm having trouble. Yeah, no problem. Article three of the trust states that this trust shall terminate and the balance thereof shall be disposed of under the terms of the will as if my wife had not survived me. That brings us to section four, which we've been discussing. Section four essentially creates a subtrust. The trust for the petitioner does not terminate. It was created upon the death of her father. Again, that's language from article four. There was discussion about the vesting language and the court needing to give it meaning. My computer only picks up when you're directly looking at the screen. I apologize, Justice Welch. Let me try to do that. The vesting language at the end of article four regarding the petitioner is given meaning only if we treat vest as a word that is different from distribute and from terminate. If we treat vest as a word that creates that subtrust that's in place to allow subsection C to have meaning as well. Subsection C, again, provides that there'd be a distribution to the petitioner in trust if one of her siblings were to pre-decease without children. Giving that provision the vesting language meaning means that vest has to be different than distribute and terminate. We've established in our brief that vest under Illinois law includes to make application to create an unconditional interest. By creating the subtrust those requirements are fulfilled and all the terms of the trust have meaning. I don't think we have anything further for the court. Thank you for your time. We would ask that you reverse and remand the trial court's July 20th order. Thank you. Well, thank you, counsel. We will take this matter under advisement and issue an order in due course. Thank you all very much. Thank you. Thank you very much.